USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _______________
DATE FILED: 6/24/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONTE McCLELLON,

Petitioner,

-against-

E. RICKARD, Warden of FCI Otisville; and WILLIAM K. MARSHALL III, Director of Federal Bureau of Prisons,

Respondents.

24-CV-10053 (VSB) (BCM)

**REPORT AND RECOMMENDATION TO THE HON. VERNON S. BRODERICK**

**BARBARA MOSES, United States Magistrate Judge.**

Petitioner Donte McClellon, proceeding pro se, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, arguing principally that under the First Step Act (FSA), 18 U.S.C. § 3632(d)(4)(A), he is entitled to time credits earned during the approximately 18 months that he spent in pretrial detention before he was convicted and sentenced to his present term of incarceration. Under the express terms of the FSA, however, a prisoner "may not earn time credits" for programming completed "during official detention prior to the date that the prisoner's sentence commences[.]" *Id.* § 3632(d)(4)(B)(ii). Consequently, as discussed in more detail below, the petition should be denied.

# I. BACKGROUND

## A. Factual Background

### 1. Petitioner's Underlying Criminal Proceedings and History of Custody

Petitioner was indicted in the Western District of Washington on May 20, 2022. *See United States v. McClellon*, No. 22-CR-73 (W.D. Wash.), Dkt. 6. On June 15, 2022, he was detained pending trial at the Federal Detention Center in SeaTac, Washington (FDC SeaTac). *See id.*, Dkt. 21; Declaration of Letticia Blakley (Blakley Decl.) (Dkt. 20) ¶ 3.[1] On July 29, 2022, petitioner was

[1] Blakley is a legal assistant employed by the Bureau of Prisons (BOP), with access to BOP's computerized inmate management program, known as SENTRY. Blakley Decl. ¶ 1. Her

released on bond. *See U.S. v. McClellon*, Dkt. 38. But on December 28, 2022, a warrant was issued for his arrest, and on January 31, 2023, he was detained pending a bond revocation hearing. *See id.*, Dkts. 83, 86. The hearing took place on March 20, 2023, at which point petitioner's bond was revoked and he was again remanded to pretrial custody. *See id.*, Dkt. 114.

On January 11, 2024, after a jury trial, petitioner was found guilty on three counts of wire fraud in violation of 18 U.S.C. § 1343, and two counts of bank fraud in violation of 18 U.S.C. § 1344(2), all in connection with fraudulent Paycheck Protection Program (PPP) loan applications through which petitioner obtained almost $500,000 during the COVID-19 pandemic. *See U.S. v. McClellon*, Dkt. 252. On May 29, 2024, petitioner was sentenced to 42 months in prison, to be followed by 36 months of supervised release, and ordered to pay $490,840.92 in restitution to the Small Business Administration and a bank. *See id.*, Dkt. 299; Blakley Decl. ¶ 4. Petitioner remained at FDC SeaTac until June 26, 2024. Blakley Decl. ¶ 5. He was then held at several BOP facilities until July 3, 2024, when he arrived at his "designated BOP facility," which was the Federal Correctional Institution in Otisville, New York (FCI Otisville). *Id.*

On March 3, 2025, petitioner was transferred to a Residential Reentry Center. Blakley Decl. ¶ 13. However, by letter dated May 5, 2025, petitioner informed the Court that he had been transferred back to FDC SeaTac on April 22, 2025. (Dkt. 26.) According to the BOP's online prisoner look-up, *see* https://www.bop.gov/mobile/find_inmate/byname.jsp (last visited June 24, 2025), petitioner remains at FDC SeaTac.[2]

declaration, dated April 8, 2025, serves largely to authenticate various SENTRY reports through that date and point out their relevant contents.

[2] Petitioner is listed in the BOP prisoner look-up (and in many of the BOP documents now before this Court) as Donte McClellan, but was convicted under the name Donte McClellon, which is also how he captions and signs his pleadings in this action.

### 2. The First Step Act and Petitioner's Earned Time Credits

Under the First Step Act, the BOP administers a "risk and needs assessment system" under which it must assess prisoners for their risk of recidivism (classified as minimum, low, medium, or high); determine the appropriate "evidence-based recidivism reduction" (EBRR) programming and "productive activities" (PA) for each prisoner; and "assign each prisoner to such programming accordingly[.]" 18 U.S.C. § 3632(a)(1)-(5). Once assigned, a prisoner can earn 10 days of "time credits" for every 30 days of "successful participation" in BOP-approved EBRR programs and PAs. *Id*. § 3632(d)(4)(A)(i). Prisoners assessed at a "minimum" or "low" recidivism risk over two consecutive assessments can earn an additional five days of time credits for every 30 days of successful participation in BOP-approved EBRR programs and PAs, *id*. § 3632(d)(4)(A)(ii), for a total of 15 days of earned time credits (ETCs) every 30 days. ETCs are "applied toward time in prerelease custody or supervised release." *Id*. § 3632(d)(4)(C).[3] However, a prisoner may *not* earn time credits for EBRR programs completed "during official detention prior to the date that the prisoner's sentence commences under section 3585(a)." *Id.* § 3632(d)(4)(B)(ii). By statute, a prisoner's sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a).

On July 29, 2024, after petitioner arrived at his designated BOP facility – FCI Otisville – he underwent a risk and needs assessment and was found to have a low risk of recidivism. Blakley Decl. ¶ 7. This was due in part to the BOP's assessment that he had "[n]o [n]eed" for a drug

---

[3] That is, "[a]pplication of the [FSA] Time Credits will enable an inmate to be transferred sooner to prerelease custody, be it in a residential reentry center, on home confinement, or on supervised release." *Clark v. Jamison*, 2023 WL 7300582, at *1 (D. Conn. Nov. 6, 2023); *see also* 18 U.S.C. § 3624(g)(1)(A), (g)(3) (permitting the BOP to transfer a prisoner to supervised release "at an earlier date," if that prisoner has – among other things – earned time credits "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment").

program. *Id*. Ex. 4. Petitioner received a similar assessment on January 19, 2025. *Id.* ¶ 8 & Ex. 5. According to the BOP, petitioner earned 40 days of FSA time credits between July 3 and November 26, 2024. *Id*. ¶ 9. Between November 26 and December 26, 2024, he received a disciplinary segregation sanction for misconduct, and did not earn any FSA time credits. *Id.* ¶ 10. Between December 27, 2024 and January 26, 2025, he earned 10 days of FSA time credits. *Id.* ¶ 11. Between January 27 and March 12, 2025, he earned 30 days of FSA time credits. *Id.* ¶ 12; *see also id*. Exs. 6, 7. Thus, as of April 2, 2025, petitioner had earned a total of 105 days of FSA time credits, moving his anticipated release date from January 6, 2026, to September 23, 2025. *Id.* ¶ 14 & Ex. 3.[4]

**B. Procedural Background**

Petitioner commenced this action on December 20, 2024, filing a hand-written petition (Pet.) (Dkt. 1), together with an Addendum and a number of exhibits. The original petition named E. Rickard, Warden of FCI Otisville, as the sole respondent, and asked the Court to order the BOP to "apply all Earned Time Credit[s] to the Sentence Computation and grant <u>immediate release</u>." Pet. at ECF p. 2.[5] In a second petition, dated February 20 and received by the pro se office on February 26, 2025 (Amend. Pet.) (Dkt. 17), petitioner sought the same relief, repeated most of the

[4] The BOP's calculation also took into account 529 days of "jail credit" applied – day for day – with respect to the time petitioner spent in detention prior to his sentencing, as well as the good time credits (GTCs) that he could earn under 18 U.S.C. § 3624(b) for satisfactory behavior. *See* Blakley Decl. Ex. 2 (applying 162 "GTC earned and projected" as of March 12, 2025). However, respondents have not updated the record (with respect to petitioner's projected release date) since April 8, 2025. In the interim, petitioner may have earned additional time credits under the FSA. He may also have lost credits for misconduct. *See Gilmore v. Puzio*, 2025 WL 509344, at *4 (D. Conn. Feb. 14, 2025) (ETCs, like GTCs, "may be lost or gained throughout a prisoner's term of imprisonment"); 28 C.F.R. § 523.43 ("Loss of FSA Time Credits"); 28 C.F.R. § 541.3, table 1 (setting out potential sanctions for "prohibited acts," in prison, including loss of GTCs and/or ETCs). Therefore, petitioner's current "anticipated release date" may be either earlier or later than September 23, 2025.

[5] This Report and Recommendation reproduces petitioner's use of capitalized, underlined, bold, and italicized text as faithfully as possible.

same allegations, and attached most of the same exhibits, but added former BOP Director Colette Peters as a respondent. *See* Amend. Pet. at ECF pp. 1-2.

On March 19, 2025, the Hon. Vernon S. Broderick, United States District Judge, referred this action to me for general pretrial management and report and recommendation. (Dkt. 12.) On April 4, 2025, Judge Broderick ordered that the second petition at Dkt. 17 "be construed as an Amended Petition in this matter," and directed the Clerk of Court to add Peters as a respondent. (Dkt. 18.)

On April 8, 2025, respondents filed an opposition memorandum (Resp. Mem.) (Dkt. 19), accompanied by the Blakley Declaration and its exhibits.[6] On April 21, 2025, petitioner filed a reply memorandum (Pet. Reply) (Dkt. 25), together with his own declaration (Pet. Decl.) (Dkt. 25 at ECF pp. 23-24) and several new exhibits.

On May 16, 2025, William K. Marshall III, the current Director of the BOP, was substituted as a respondent in place of Colette Peters, pursuant to Fed. R. Civ. P. 25(d). (Dkt. 27.)

### C. The Amended Petition

The Amended Petition includes a two-page document entitled "Pro Se Motion under Title 28 U.S.C. § 2241," *see* Amend. Pet. at ECF pp. 1-2; a three-page "Addendum," *see id.* at ECF pp. 4-6; and a number of exhibits. The main body of the Amended Petition alleges that the BOP failed to give petitioner all of the ETCs to which he believes he is entitled under the FSA; asserts that he made a "good faith effort" to exhaust his administrative remedies; and asks this Court to "forc[e]

---

[6] The government's memorandum states that it was filed on behalf of respondent Rickard, in opposition to the original Petition. *See* Resp. Mem. at 1. However, as noted above, the Amended Petition seeks the same relief as the original Petition. Further, by letter dated May 23, 2025, Assistant United States Attorney Leslie A. Ramirez-Fisher requested that "[t]he government's Response to the Writ and supporting papers, Dkt. Nos 19 and 20, . . . be construed as having been filed on behalf of both respondents." (Dkt. 29.) I therefore construe the government's memorandum and supporting declaration as having been filed in response to the operative pleading – the Amended Petition – on behalf of both respondents.

the Bureau of Prisons to apply all Earned Time Credit[s] to the Sentence Computation and grant immediate release." Amend. Pet. at ECF pp. 1-2. The Addendum explains his principal contention: that he participated in EBRR programs and PAs while detained at FDC SeaTac for 18 months prior to sentencing and is "entitled by Law to FSA Earned Time Credits for that time as well." *Id.* at ECF p. 5. Specifically, petitioner contends, he is entitled to a minimum of "6 months/180 days of FSA Earned Time Credits" for the time he spent in pretrial detention, which – by his calculation – means that his sentence is "time-served effective immediately." *Id.* at ECF pp. 5-6. Petitioner explains that while in pretrial detention he engaged in various EBRRs and PAs, "including but not limited to cleaning/orderly job (work requirement), religion threshold and remained in opt-in status by completing all FSA surveys on Trulincs." *Id.* at ECF p. 5.

The Addendum also raises a number of claims relating to petitioner's conditions of confinement at FCI Otisville, including (i) the working conditions in the Otisville kitchen, where the ventilation was inadequate and petitioner was given "damaged oven mitts that have holes in them," resulting in frequent burn injuries; (ii) the lack of medical care he received for his burn injuries and for his hemorrhoids; and (iii) the "severe unavailability of FSA programs at FCI Otisville camp such as RDAP in order to reduce sentence by a year." Amend. Pet. at ECF p. 6.[7]

Lastly – as relevant here – petitioner requests, in the Addendum, that his pleading be "liberally construed" as a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Amend. Pet. at ECF p. 4. Insofar as the Court understands his argument on this point, he contends that the BOP's refusal to give him FSA time credits for the 18 months that he spent in pretrial detention, together with the fact that he had already served 26 months of his 42-month custodial

[7] The Court understands RDAP to mean a BOP-approved Residential Drug Abuse Program governed by 18 U.S.C. § 3621(e). If a nonviolent offender with a drug abuse problem successfully completes an RDAP – which takes at least six months, in "residential treatment facilities set apart from the general prison population" – the BOP may shorten that offender's custodial sentence by up to one year. *Id.* §§ 3621(e)(2)(B), (e)(5)(A), (e)(5)(B)(i).

sentence, is grounds for compassionate release. *Id*. at ECF pp. 4-5. Petitioner also claims that the sentencing court "improperly enhanced the sentencing guidelines" and "used intended loss," *id*. at ECF p. 5, suggesting that he seeks to modify his sentence pursuant to 18 U.S.C. § 3582(c)(1)(B) or "correct" it pursuant to 28 U.S.C. § 2255(a).[8]

Among the exhibits attached to the Amended Petition are a series of administrative complaints that McClellon submitted in an effort to exhaust his administrative remedies regarding his claim that he is entitled to additional ETCs under the FSA. These include:

- An Informal Resolution Form (BP-8), dated September 9, 2024, with a response from prison staff dated September 19, 2024;
- A Request for Administrative Remedy (BP-9), dated September 19, 2025, with a response from the Acting Warden dated September 27, 2024;
- A Regional Administrative Remedy Appeal (BP-10), dated October 3, 2024, with no response; and
- A Central Office Remedy Appeal (BP-11), dated October 9, 2024, and stamped "received" November 14, 2024, with no response.

Amend. Pet. at ECF pp. 1, 29-30, 31-32, 33, 34. Petitioner also attaches an "Inmate Request to Bureau Employee" form, dated August 19, 2024, in which he requested "to be transferred to

---

[8] Prior to petitioner's sentencing, the Probation Department and the government calculated his "total offense level" under the Sentencing Guidelines at 23, including 14 points for the "intended" fraud loss (including PPP loans that McClellon applied for but did not receive), which was more than $550,000. *See U.S. v. McClellon*, Dkt. 291, at 13-14; USSG § 2B1.1(b)(1), comment n.3(A) ("loss is the greater of actual loss or intended loss"). Petitioner, through counsel, argued that only 12 points should be added for the loss calculation, based on the "actual amount of the loss," which was approximately $500,000. *See id*., Dkt. 294, at 4. At sentencing, the court added 14 points, as requested by the government. *See id*., Dkt. 348, at 30. Petitioner correctly notes (*see* Amend. Pet. at 5), that the Third Circuit has rejected application note 3(A) and ruled that "loss," as used is USSG § 2B1.1(b)(1), is limited to actual loss. *See United States v. Banks*, 55 F.4th 246, 257-58 (3d Cir. 2022). The Second and Ninth Circuits, however, have held to the contrary. *See United States v. Hackett*, 123 F.4th 1005, 1015 (9th Cir. 2024) ("The district court did not plainly err by relying upon the definition of 'loss' set forth in the commentary to § 2B1.1."); *United States v. Rainford*, 110 F.4th 455, 475 (2d Cir. 2024) ("[T]he application note defining loss is neither inconsistent with nor a plainly erroneous reading of the guideline.").

supervised release, *see id* at ECF p. 15,[9] and a Trulincs email that he sent to the Associate Warden of Programs on February 20, 2025, asking to sign up for "the following FSA classes below: RDAP, STAGES Program and Challenge Program." *Id.* at ECF p. 16.

**D. Respondents' Opposition**

With respect to petitioner's earned time credits claim under the FSA – and any other claim that might properly be brought in this Court – respondents argue that he failed to exhaust his administrative remedies. Resp. Mem. at 1, 7-9, 13-16. Respondents further contend that even if petitioner had exhausted his FSA claim, it would fail on the merits, because "under the FSA, he could not earn time credits any time before sentencing on May 29, 2024." *Id.* at 1-2, 16-18. Finally, respondents argue that any challenge to petitioner's underlying sentence cannot be brought in this Court through a § 2241 habeas petition. *Id.* at 18-19.

**E. Petitioner's Reply**

In his (typed) reply papers, petitioner presses the "heart" of his claim: that he is entitled to FSA time credits pursuant to 18 U.S.C. § 3632(d)(4) for the approximately 18 months that he spent in pretrial detention. Pet. Reply at 2-4; *see also* Pet. Decl. ¶ 5 (attesting that while in pretrial detention at FDC SeaTac he "worked as a Unit Orderly"). Additionally, petitioner argues that any failure to fully exhaust his administrative remedies should be excused because "BOP's administrative remedy process is untimely, opaque, and incapable of addressing the systemic failure at issue," Reply Mem. at 6, and because the BOP was tampering with his mail. *Id.* at 7-8; *see also* Pet. Decl. ¶ 3 ("I personally observed mail tampering."). Finally, petitioner adds a new claim: that he is entitled to a 12-month sentence reduction pursuant to 18 U.S.C. § 3621(e)(2)(B)

---

[9] On the same form, petitioner complained that he "did programming while in pretrial custody" but did not receive any corresponding FSA time credits, and advised that he had various medical conditions (sleep apnea, hemorrhoids, and asthma) that were not being adequately treated at FCI Otisville. Amend. Pet. at ECF p. 15.

because he has completed a residential drug abuse program. Pet. Reply at 2, 3, 14-18, 19-20; Pet. Decl. ¶ 8 ("I completed RDAP.").[10] Petitioner again requests that this Court grant him immediate "release to supervised custody," *id*. at 21, this time based on his "accumulated First Step Act [time credits] and RDAP-based sentence reduction as well as Good Time Credit reduction." Pet. Reply at 21. Petitioner does not seek damages.[11]

## II. LEGAL STANDARDS

### A. Habeas Corpus Relief

A writ of habeas corpus may be granted to a prisoner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "A petition for a writ of *habeas corpus* under § 2241 allows a federal inmate to challenge the 'execution of his sentence' after conviction, rather than the imposition of the sentence itself." *Rosales v. Petrucci*, 2021 WL 5449701, at *3 (S.D.N.Y. Nov. 22, 2021) (quoting *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001)). Consequently, "[t]he proper vehicle for a challenge to the BOP's calculation of earned time credit is a petition for a writ of *habeas corpus* under 28 U.S.C. § 2241."

[10] Petitioner does not provide any documentary evidence that he has completed a residential drug abuse program. This is not surprising. Only inmates determined by the BOP to have a "substance abuse problem" are eligible for RDAP placement. 18 U.S.C. § 3621(e)(5)(B). Insofar as the record before this Court reflects, petitioner McClellon does not have a substance abuse problem. *See* Blakley Decl. Ex. 3 (reflecting that petitioner was assessed as "Drug Education Exempt" and did not need substance abuse programming); *id*. Ex. 5 (FSA Recidivism Risk Assessment reflecting that petitioner had "No Need" for a drug program). Moreover, a BOP-approved RDAP lasts "at least 6 months, in residential treatment facilities set apart from the general prison population." 18 U.S.C. § 3621(e)(5)(A). Yet barely two months elapsed between February 20, 2025, when McClellon asked to be "signed up and waitlisted" for RDAP, *see* Amend. Pet. at ECF p. 16, and April 21, 2025, when he signed his reply papers, in which he claims to have completed such a program.

[11] To be more precise: petitioner does not seek damages in this action. On April 9, 2025, he filed a new case in this Court, seeking damages pursuant to the Federal Tort Claims Act and the *Bivens* doctrine for the government's alleged failure to properly reduce his sentence "based on Good Conduct Time (6 months), First Step Act credits (12 months), and the Residential Drug Abuse Program (RDAP) credits (12 months)." *See* Compl. (Dkt. 1) ¶ 7, *McClellon v. United States of America*, No. 25-CV-02988 (VSB) (S.D.N.Y. April 9, 2025).

*Sanchez v. Warden at F.C.I. Hazelton*, 2024 WL 1969792, at *2 (S.D.N.Y. May 1, 2024); *see also Frazer v. Petrucci*, 2019 WL 5887302, at *2 (S.D.N.Y. Nov. 8, 2019) ("habeas relief under 28 U.S.C. § 2241 is the correct vehicle" for a claim that "the BOP has calculated [good time] credits incorrectly").

In our Circuit, challenges to a federal inmate's conditions of confinement may also be brought pursuant to § 2241. *See Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) ("This court has long interpreted § 2241 as applying to challenges to the execution of a federal sentence, 'including such matters as . . . prison conditions'") (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001)); *Acevedo v. Capra*, 545 F. Supp. 3d 107, 117 (S.D.N.Y. 2021) (under "longstanding Second Circuit precedent," prisoner could challenge his federal conditions of confinement pursuant to § 2241). However, such a challenge becomes moot, and consequently must be dismissed for lack of subject-matter jurisdiction, if the petitioner has since been transferred to a different facility. *See Thompson*, 525 F.3d at 209 (affirming the dismissal of Thompson's conditions-of-confinement claims because he "has since been transferred from the Connecticut facility to the United States Penitentiary at Lewisburg, Pennsylvania," making those claims "moot"); *Cohen v. Jamison*, 2023 WL 3511124, at *2 (S.D.N.Y. Apr. 10, 2023) (denying § 2241 habeas petition as moot because petitioner was "challenging the conditions of his confinement at FCI Gilmer, but he is currently incarcerated at FCI Otisville"), *reconsideration denied*, 2023 WL 3412762 (S.D.N.Y. May 12, 2023); *Razzoli v. Strada*, 2013 WL 837277, at *2 (E.D.N.Y. Mar. 6, 2013) ("A § 2241 challenge to conditions of confinement will be considered moot where the petitioner has been transferred to a different facility[.]").

Challenges to the original imposition of a sentence (for example, on the ground that the sentencing court "improperly enhanced the sentencing guidelines," Amend. Pet. at ECF p. 5), must be brought before "the court which imposed the sentence." 28 U.S.C. § 2255(a); *see also Jiminian*,

245 F.3d at 147 ("[F]ederal prisoners must use § 2255 instead of § 2241(c)(3) to challenge a sentence as violating the Constitution or laws of the United States."). Similarly, motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A) or for a sentence reduction under 18 U.S.C. § 3582(c)(1)(B) "must be made to the sentencing court that imposed that sentence." *United States v. Boyle*, 2024 WL 4836339, at *3 (E.D.N.Y. Nov. 20, 2024) (collecting cases); *see also United States v. Avery*, 807 F. App'x 74, 77 (2d Cir. 2020) ("[A]ny motion to reduce Avery's sentence [under 18 U.S.C. § 3582(c)(1)(B)] should be made to the proper sentencing court in the Eastern District of Virginia."); *Jiminez v. Warden*, 2025 WL 1233199, at *2 (D. Conn. Apr. 29, 2025) ("[T]o the extent Petitioner is requesting a sentence reduction or compassionate release under 18 U.S.C. § 3582(c), [she] must make these requests with the sentencing court that imposed her sentence."); *Castelle v. Pullen*, 2022 WL 4448898, at *4 (D. Conn. Sept. 23, 2022) (because petitioner's "sentencing court is the Southern District of New York," the District of Connecticut "lacks jurisdiction" to consider his request for a sentence reduction or compassionate release).

**B. Exhaustion**

"The Second Circuit has established that a prerequisite to federal habeas corpus relief pursuant to § 2241 is the exhaustion of administrative remedies." *Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009) (citing *Carmona*, 243 F.3d at 634); *see also Lesane v. Tellez*, 2021 WL 3500916, at *2 (S.D.N.Y. Aug. 4, 2021) ("Although § 2241 does not expressly require exhaustion of administrative remedies, in this Circuit, exhaustion of administrative remedies is generally a prerequisite to habeas corpus relief under § 2241."). Prisoners seeking relief pursuant to § 2241 must exhaust their administrative remedies in accordance with the BOP's four-step Administrative Remedy Program, which allows "an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a).

At the initial step, the inmate must "present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). Next, the inmate must submit a formal written Administrative Remedy Request to the Warden of his facility, using a "BP-9" form. 28 C.F.R. § 542.14(a). The deadline to complete the informal resolution and submit the BP-9 form is "20 calendar days following the date on which the basis for the Request occurred." *Id*. Third, if the inmate is "not satisfied with the Warden's response," he "may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the inmate is still not satisfied, "the final administrative appeal" must be submitted to the BOP's General Counsel, on form BP-11, "within 30 calendar days of the date the Regional Director signed the response." *Id*. The General Counsel has 40 days (which may be extended, if necessary, by 20 days) to consider the appeal. 28 C.F.R. § 542.18. "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id*.

Because the exhaustion requirement as to § 2241 habeas petitions is "prudential, not statutory," a petitioner's failure to exhaust "may be excused at the court's discretion." *Zucker v. Menifee*, 2004 WL 102779, at *4 (S.D.N.Y. Jan. 21, 2004). In our Circuit, exhaustion has been excused where "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003), *as amended* (July 24, 2003) (internal quotation omitted); *see also Rosenthal*, 667 F. Supp. at 366 ("A court can excuse a failure to exhaust administrative remedies when such exhaustion would be futile or where the agency has predetermined the issue before it.") (internal quotation omitted); *Rosales*, 2021 WL 5449701, at

*3 ("Courts may excuse a *habeas* petitioner's failure to exhaust administrative remedies where doing so would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue.") (internal quotation omitted).

Exhaustion of administrative remedies is also required before a prisoner may seek compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A) (permitting a defendant to move the court for compassionate release only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier"). The Second Circuit has held that this exhaustion requirement, although statutory, is not jurisdictional, but rather is "a claim-processing rule that may be waived or forfeited by the government." *United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021). However, our Circuit has not yet spoken as to whether § 3582(c)(1)(A) exhaustion may also be waived on equitable grounds, and there is a split among the district courts. *Compare, e.g.*, *United States v. Jackson*, 2024 WL 4215741, at *3 (S.D.N.Y. Sept. 17, 2024) ("because Section 3582(c)(1)(A)'s exhaustion requirement is a mandatory claim-processing rule and the Government has properly raised Mr. Jackson's failure to exhaust, the 'rule must be enforced'") (quoting *Donnelly v. Controlled Application Rev. & Resol. Program Unit*, 37 F.4th 44, 57 (2d. Cir. 2022)) *with United States v. Williams-Bethea*, 464 F. Supp. 3d 562, 566 (S.D.N.Y. 2020) (Nathan, J.) (holding that "the statute's exhaustion requirement is amenable to equitable exceptions," such as "waiver, estoppel, and futility," and excusing health-compromised inmate's failure to exhaust her administrative remedies during COVID pandemic, when the time required to exhaust "could be the difference between life and death").

### C. Pro Se Petitioner

Because petitioner is proceeding pro se, the Court must construe his pleading "broadly" and "interpret it to raise the strongest arguments it suggests." *Sharpe v. Conole*, 386 F.3d 482, 484 (2d Cir. 2004). However, a pro se party must "still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action." *Harris v. Giorgio*, 2019 WL 5742607, at *1 (E.D.N.Y. Nov. 5, 2019) (quoting *Ally v. Sukkar*, 128 F. App'x 194, 195 (2d Cir. 2005)).

## III. ANALYSIS

### A. FSA Claim

#### 1. Exhaustion

Respondents appear to be correct that petitioner "failed to exhaust his claim with respect to calculation and/or application of FSA earned time credits." Resp. Mem. at 13. They concede (and the record confirms) that petitioner completed the first two steps of the BOP's Administrative Remedies Program by submitting a BP-8 form to prison staff, which was rejected, and then submitting a timely BP-9 form to the Warden, which was also rejected.[12] They also concede (and the record confirms) that on October 3, 2024, petitioner submitted a BP-10 form to the Regional Director, which was received on October 7, 2024 and – although difficult to read – appears to argue again that he is owed FSA time credits. *See* Amend. Pet. at ECF p. 33.

---

[12] *See* Amend. Pet. at ECF p. 29 (BP-8 form, dated September 9, 2024, complaining that petitioner is "missing FSA time credits for time that I did at FDC Seatac for 18 months" and is "owed at a minimum 6 months (180 days) of FSA time credits"); *id*. at ECF p. 30 (response to BP-8 from prison "unit manager," dated September 19, 2023, stating that petitioner had only "20 FTC [Federal Time Credits] toward release" as of that date); *id*. at ECF. p. 31 (BP-9 form, dated September 19, 2024, arguing again that petitioner was "missing FSA time credits earned for time that I did at FDC Seatac for <u>18 months</u>," and calculating that he was owed "<u>200</u> FTC toward release"); *id*. at ECF p. 32 (response to BP-9 from an Acting Warden, dated September 27, 2024, denying petitioner's request because "an inmate cannot earn FTCs during pretrial confinement").

However, petitioner did not receive any response to the BP-10 from the BOP. According to respondents, this is because the BP-10 was rejected as illegible, with instructions that it "could be resubmitted in the proper form in 10 days." Blakley Decl. ¶ 23 & Ex. 9, at 7. Moreover, according to respondents, petitioner failed to resubmit the BP-10 to the Regional Director within ten days (or at all). *Id.* ¶ 24 & Ex. 9. Instead, on October 9, 2024, petitioner submitted a BP-11 form ("Central Office Remedy Appeal") to the General Counsel, which was received on November 14, 2024, in an effort to "appeal the regional director's response to my request for administrative remedy." Amend. Pet. at ECF p. 34. Again, petitioner did not receive any BOP response. According to respondents, this is because the BP-11 was rejected for failure to "properly exhaust at the regional level prior to filing the BP-11[.]" Blakley Decl. ¶ 25; *see also id.* Ex. 9, at 7. Respondents further state that on February 2, 2025, petitioner submitted another BP-11, which was also rejected, "because, as previously informed, he had to make corrections and resubmit his appeal to the Regional Director for review and response." Blakley Decl. ¶ 26 & Ex. 9, at 11. Finally, on February 3, 2025, petitioner submitted a fresh appeal to the Regional Director, which was rejected as untimely. *Id.* ¶ 27 & Ex. 9, at 12.[13]

Petitioner, for his part, does not deny that he failed to properly navigate the final steps of the four-step BOP administrative review process, but argues – among other things – that exhaustion would be futile because "any appeal that relies on a correct reading of the statute will be rejected under current agency policy." Pet. Reply at 6. In fact, petitioner has it backwards. As discussed below, the BOP read the FSA correctly when the Acting Warden informed him, at step two, that an inmate cannot earn FSA time credits "during pretrial confinement." Amend. Pet. at ECF p. 32. Petitioner is correct, however, that exhaustion would have been a "dead end," Pet.

[13] Neither petitioner nor respondents submitted copies of the February 2 or February 3, 2025 administrative appeals to this Court.

Reply at 6, in the sense that he would have received exactly the same answer at steps three and four. Moreover, while in many cases exhaustion serves the salutary purpose of "developing the factual record to make judicial review more efficient," *Beharry*, 329 F.3d at 62, here there are no undeveloped facts standing in the way of efficient judicial review. I therefore exercise my discretion to excuse petitioner's failure to fully exhaust his administrative remedies and proceed to the merits. *See United States v. Herrera*, 2023 WL 3862695, at *2 n.1 (S.D.N.Y. June 7, 2023) ("the Court need not address whether Mr. Herrera has exhausted administrative remedies or if any failure to exhaust should be excused because the motion lacks merit for other reasons."); *Gale v. Warden FCI Milan*, 2025 WL 223870, at *3 (E.D. Mich. Jan. 16, 2025) (declining to "get bogged down over exhaustion" in case involving proper application of FSA time credits where the merits of the dispositive legal issue were clear).

**2. Merits**

Petitioner contends that the BOP failed to apply "at least" 180 days of ETCs accrued during his pretrial detention at FDC SeaTac, when he worked as a Unit Orderly. *See* Amend. Pet. at ECF pp. 5-6; Pet. Reply at 2-4; Pet. Decl. ¶ 5. Under the statute, however, a prisoner may not earn FSA time credits "prior to the date that the prisoner's sentence commences," 18 U.S.C. § 3632(d)(4)(B)(ii), and a sentence does not "commence" until "the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Thus, the FSA "does not allow [McClellon] to receive credit for any rehabilitation programming [he] completed before [he] was sentenced" on May 29, 2024. *Smith v. Stover*, 2024 WL 3279014, at *1-2 (D. Conn. June 20, 2024); *see also Lopez v. Terrell*, 654 F.3d 176, 185 (2d Cir. 2011) ("[A] federal sentence cannot commence prior to the date on which it is imposed.").

Since the FSA is clear and unambiguous on this point, the courts have had no difficulty applying it. *See, e.g.*, *Schaefer v. Eischen*, 2025 WL 1118627, at *2 (D. Minn. Mar. 12, 2025) ("Where a prisoner is already in BOP custody when the sentence is imposed, the prisoner's term of imprisonment may commence as soon as the moment of sentencing – but no sooner."), *adopted*, 2025 WL 1115028 (D. Minn. Apr. 15, 2025); *Gale*, 2025 WL 223870, at *3 ("[I]t is clear that Gale is not entitled to an award of time credits for programming that he completed while in pretrial detention and prior to his sentencing."); *Stinson v. Martinez*, 2024 WL 4969169, at *6 (W.D. La. Nov. 12, 2024) ("[T]he FSA prohibits a prisoner from earning credits for any time prior to the day he is sentenced."), *adopted as modified*, 2024 WL 4965618 (W.D. La. Dec. 3, 2024), *cert. denied before judgment*, 145 S. Ct. 1345 (2025); *Stevens v. Jacquez*, 2024 WL 3200546, at *3 (D. Or. June 25, 2024) (because "[p]etitioner was not in federal custody awaiting transportation to his designated facility until his sentencing on March 2, 2022," he was "not eligible for FSA credit until that date, at the earliest"); *Snyder v. Stover*, 2024 WL 2836229, at *2 (D. Conn. May 9, 2024) ("according to statute," petitioner was "not eligible to earn time credits" for programs that she completed before the date on which she was sentenced); *Luque v. Fed. Bureau of Prison*, 2024 WL 1641947, at *2 (D. Minn. Mar. 5, 2024) ("Ms. Luque was not eligible to receive FSA time credits for participating in any qualifying programming for the period when she was in federal custody but had not yet been sentenced."), *adopted*, 2024 WL 1641122 (D. Minn. Apr. 16, 2024); *Ferreira v. Derr*, 2023 WL 2898670, at *2 (D. Haw. Apr. 11, 2023) ("Pretrial and 'holdover' inmates are not entitled to FSA ETCs.")[14]

---

[14] Petitioner cites three cases in which – he says – the courts "recognized that *time served in BOP custody prior to sentencing is* **eligible for FSA time credit accrual** when the individual engages in qualifying programs or work." Pet. Reply at 14 (citing *Bertolino v. Warden, FCI Berlin*, 2023 WL 2476526, at *4 (D.N.H. Mar. 13, 2023), and *Reyes v. Warden FCI Otisville*, 2023 WL 1769190, at *4 (S.D.N.Y. Feb. 3, 2023)); *see also* Pet. Reply at 18 (citing *Crowe v. Bureau of Prisons*, 2023 WL 2918601 (D.S.C. Apr. 12, 2023)). After diligent search, however, this Court

BOP regulations further narrow the timeframe in which an inmate may earn FSA time credits. Under 28 C.F.R. § 523.42(a), an eligible inmate "begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)." Relying on *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), in which the Supreme Court "overruled the Chevron doctrine," Amend. Pet. at ECF p. 5, petitioner argues that "[c]ourts owe no deference to the BOP's internal rules or informal interpretations that conflict with clear statutory mandates." Pet. Reply at 2-3. Respondents, for their part, defend § 523.42(a) as "not inconsistent with the statute, which mandates what the BOP *cannot* do, *i.e.*, permit an inmate to earn credits prior to the commencement of his prison sentence, but does not mandate what the BOP *must do*, *i.e.*, require the BOP to allow an inmate to earn credits immediately upon commencement of his prison sentence." Resp. Mem. at 11.

The district courts are split on this issue. "Several courts have found that the BOP's policy conflicts with the statute" and therefore is not entitled to any deference. *Freeman v. Lillard*, 2025 WL 1358556, at *2 (S.D. Ill. May 9, 2025) (collecting cases); *see also, e.g.*, *Heath v. Knight*, 2024 WL 5198863, at *4 (D.N.J. Dec. 23, 2024) ("28 C.F.R. § 523.42(a) is invalid because it conflicts with 18 U.S.C. § 3585(a)."). Others (including at least one court in this district) have upheld the BOP's FSA rules as "consistent with the statutory scheme." *Glover v. Warden, Fed. Bureau of Prisons*, 2025 WL 1397140, at *4 (S.D.N.Y. May 14, 2025); *see also, e.g.*, *Harper v. FCI Waseca*, 2024 WL 3164981, at *5-6 (D. Minn. May 28, 2024) (reasoning that "the BOP's decision to have initial risk assessments occur when a prisoner arrives at an official detention facility acceptably

---

has been unable to locate any of these opinions – or the language that petitioner attributes to them and places inside quotation marks. I address this issue further in Part III(C), *infra*.

implements relevant statutes and regulations"), *adopted sub nom. Harper v. Warden of FCI Waseca*, 2024 WL 3163730 (D. Minn. June 25, 2024).

This Court, however, need not pick sides. As respondents correctly note, petitioner "did not actually participate in any EBRR activity or PAs after sentencing but before his arrival at FCI Otisville." Resp. Mem. at 12 n.5. Thus, it is irrelevant to his habeas petition whether he was eligible to earn FSA time credits from the moment he was sentenced, on May 29, 2024, or not until he arrived at FCI Otisville on July 3, 2024. *See Barry v. Greene*, 2025 WL 1462571, at *3 (M.D. Pa. May 21, 2025) (denying habeas petition without resolving the viability of 28 C.F.R. § 523.42(a), because "Barry has not shown that he participated at all in any such programs or activities from the time he was sentenced until he arrived at his designated facility"); *Palmer v. Flowers*, 2025 WL 1220183, at *4 (D. Conn. Apr. 28, 2025) ("assuming without deciding" that petitioner's sentence commenced on the day he was sentenced – rather than one month later, when he arrived at his designated facility – but denying habeas petition because "he did not 'earn' any ETCs in that time period for the BOP to apply"); *Smith*, 2024 WL 3279014, at *2 (declining to "decide whether the FSA allows credit for such post-sentencing rehabilitation programming that occurs prior to a prisoner's arrival at the facility where she will serve her sentence" where petitioner "furnishe[d] no evidence that she took part in any programming during that time period"); *Dane v. Bayless*, 2024 WL 5150683, at *4 (N.D.W. Va. Nov. 20, 2024) (denying habeas petition without reaching *Loper Bright* issue where "[p]etitioner makes no showing that he successfully participated in EBRR programming to justify the FSA time credit he seeks"), *adopted*, 2024 WL 5150650 (N.D.W. Va. Dec. 17, 2024).

Petitioner McClellon's sole FSA claim is his contention that he is entitled to 180 days of additional ETCs because he "worked as a **Unit Orderly** and participated in programming while in **pretrial custody** at FDC SeaTac." Pet. Reply at 3. As discussed above, "the prohibition on persons

in prejudgment custody receiving FSA credits does not derive from BOP policy, but from the FSA itself." *Schaefer*, 2025 WL 1118627, at *2, specifically, from 18 U.S.C. § 3632(d)(4)(B)(ii). Thus, petitioner is not entitled to habeas relief with respect to his FSA claim.

**B. Other Claims**

Petitioner's remaining claims fare no better.

**1. RDAP Claim**

Much of petitioner's reply memorandum is devoted to his claim that he is entitled to a 12-month sentence reduction (and thus is entitled to immediate release) because he has completed a residential drug abuse program. Pet. Reply at 3, 4, 8, 14-17, 19, 20, 21. It is well-settled, however, that a habeas petitioner cannot amend his petition – much less introduce wholly new claims – in his reply brief. *See*, *e.g*., Gilmore, 2025 WL 509344, at *1 n.2 (dismissing the "additional claims" that habeas petitioner attempted to raise "in her reply brief"); *Roberts v. United States*, 2018 WL 1582288, at *2 (E.D.N.Y. Mar. 30, 2018) (declining to consider claim raised for the first time in reply to habeas petition, "particularly since the government had no opportunity to oppose it"); *Melo v. United States*, 825 F. Supp. 2d 457, 464 (S.D.N.Y. 2011) (Melo waived argument made "for the first time in his Reply"). Moreover, there is no suggestion in the record that petitioner ever asked the BOP to reduce his sentence pursuant to 18 U.S.C. § 3621(e)(2)(B) before alleging, in this Court, that the agency's "delay in applying RDAP sentence reduction . . . violates the law." Pet. Reply at 3. His RDAP claim is thus entirely unexhausted.

To be sure, some courts are willing to accept a late (and unexhausted) habeas claim where proper application of the disputed credits "would entitle [the petitioner] to immediate release." *Lallave v. Martinez*, 609 F. Supp. 3d 164, 182 (E.D.N.Y. 2022), *reconsideration denied*, 635 F. Supp. 3d 173 (Oct. 13, 2022); *see also Portocarrero-Valencia v. Warden, FCI Otisville*, 2025 WL 670911, at *5 (S.D.N.Y. Feb. 28, 2025) ("[I]f Petitioner is correct that the BOP has improperly

denied his FSA ETCs, then 'exhaustion for this claim could be excused on the basis of irreparable harm.'") (quoting *Lallave*, 609 F. Supp. 3d at 182). In this case, however, the claim is not only untimely and unexhausted; it is unsupported by any evidence in the record (beyond petitioner's bare assertion that he "completed RDAP," Pet. Decl. ¶ 8). It is also wholly implausible, given that petitioner (i) is not eligible for RDAP, *see* 18 U.S.C. § 3621(e)(5)(B) (program is limited to inmates determined by the BOP to have a "substance abuse problem"), and (ii) did not have enough time to complete such a program between February 20, 2025, when he attempted to sign up for RDAP, and April 21, 2025, when he signed his reply brief, claiming to have completed such a program. *See* 18 U.S.C. § 3621(e)(5)(A) (a BOP-approved RDAP requires "at least 6 months" of participation, in "residential treatment facilities set apart from the general prison population"). I therefore recommend that petitioner's RDAP claim, like his FSA claim, be denied.

**2. Conditions of Confinement**

Petitioner's allegations concerning poor working conditions in the FCI Otisville kitchen, inadequate medical care at FCI Otisville, and lack of FSA and RDAP programming at FCI Otisville were cognizable under 28 U.S.C. § 2241 at the time he filed his habeas petition. However, petitioner is no longer confined at FCI Otisville, making these claims moot. *See Thompson*, 525 F.3d at 209; *Cohen*, 2023 WL 3511124, at *2; *Razzoli*, 2013 WL 837277, at *2. I therefore recommend that petitioner's conditions-of-confinement claims be dismissed for lack of subject-matter jurisdiction.

**3. Compassionate Release and Sentence Reduction**

I have – as requested – "liberally construed" petitioner's pleading as a request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), *see* Amend. Pet. at ECF p. 4, or, potentially, a request to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(B) or "correct" it pursuant to 28 U.S.C. § 2255(a). Insofar as the record reflects, however, plaintiff never made any

effort to ask the BOP for compassionate release, as required by 18 U.S.C. § 3582(c)(1)(A). *See* Blakley Decl. ¶ 33 ("Petitioner did not file a request for administrative remedy or administrative appeals relating to a request for compassionate release[.]"). His compassionate release motion is therefore unexhausted.[15]

Even more fundamentally, this Court lacks jurisdiction to entertain petitioner's request for compassionate release – or for reduction or correction of his sentence – because he was sentenced in the Western District of Washington. *See* 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move *the court which imposed the sentence* to vacate, set aside or correct the sentence.") (emphasis added); *Rashid v. Pullen*, 2023 WL 2329549, at *2 (D. Conn. Mar. 2, 2023) ("[A] request for a sentence reduction or compassionate release under 18 U.S.C. § 3582 must be made to an inmate's sentencing court."). Accordingly, insofar as the Amended Petition is construed as a motion for compassionate release, or a motion to correct or reduce petitioner's sentence, I recommend that it be "dismissed without prejudice for lack of jurisdiction." *Castelle*, 2022 WL 4448898, at *6.[16]

---

[15] Unlike petitioner's FSA claim, which turns on a single question of statutory interpretation, a request for compassionate release is inherently fact-specific, requiring the prisoner to demonstrate "extraordinary and compelling" reasons to warrant a reduction to his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Such a claim requires development through the administrative review process to "make judicial review more efficient." *Beharry*, 329 F.3d at 62. In all but the most dire situations, therefore, the district courts strictly enforce the exhaustion requirement and dismiss unexhausted § 3582(c)(1)(A) motions. *See, e.g.*, *Jackson*, 2024 WL 4215741, at *3. Here, no dire circumstances are presented. There is thus no reason for this Court to excuse petitioner's failure to exhaust his administrative remedies with respect to compassionate release.

[16] Petitioner has already made a number of post-judgment motions to the sentencing court, including (1) a motion to modify the conditions of his supervised release, filed on February 7, 2025, *see U.S. v. McClellon*, Dkt. 352; (2) a motion for "bond/release pending appeal," filed on

### C. Fake Citations

At least three of the cases cited in plaintiff's reply memorandum do not exist. *See* n.14, *supra*. Were plaintiff represented by counsel, this would be grounds for significant sanctions. *See, e.g.*, *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448 (S.D.N.Y. 2023) (sanctioning attorneys for citing "non-existent judicial opinions with fake quotes and citations created by the artificial intelligence tool ChatGPT"). Moreover, "it is no more acceptable for a *pro se* litigant to submit briefs with fake case citations than it is for a lawyer to do so." *Dukuray v. Experian Info. Sols.*, 2024 WL 3812259, at *11 (S.D.N.Y. July 26, 2024), *adopted*, 2024 WL 3936347 (S.D.N.Y. Aug. 26, 2024). Nonetheless, the courts have been hesitant to sanction pro se plaintiffs for such misconduct, reasoning that they may not fully understand the dangers of using artificial intelligence (AI) tools in place of traditional legal research. *See id*. at *11-12 (noting that it is "possible" that plaintiff was "not aware of the risk" that AI programs "are capable of generating fake case citations," but warning her "that any further filings with citations to nonexistent cases may result in sanctions"); *Anonymous v. New York City Dep't of Educ.*, 2024 WL 3460049, at *7 (S.D.N.Y. July 18, 2024) (declining to sanction pro se plaintiff "at this time" for citing to "what appears to be non-existent legal authority," but warning that "the Court will not look kindly on similar infractions in the future").

---

February 14, 2025 (in which McClellon argued, among other things, that the sentencing court could and should "order Defendant time-served" in light of the additional FSA time credits to which he believes himself entitled), *see id*., Dkt. 355; (3) a motion to "stay restitution and forfeiture pending appeal," filed on February 14, 2025, *see id*., Dkt. 356; (4) a motion for "sanctions and issuance of gag order" against one of his former attorneys, filed on March 3, 2025, *see id*., Dkt. 359; (5) a motion to modify his presentence investigation report, filed on March 3, 2025, *see id*., Dkt. 361; and (6) a motion to strike the sentencing memorandum filed by his former attorney, and for related relief, filed on March 3, 2025, *see id*., Dkt. 363. All of these motions have been denied. *See id*., Dkts. 368, 369, 371.

In this case, as in *Dukuray*, it is possible that petitioner was "not aware" that he was citing fictitious cases. 2024 WL 3812259, at *11. Consequently, I do not recommend monetary sanctions. However, because petitioner is an active litigant, *see* nn.11, 16, *supra*, and may have cited fictitious cases in other proceedings, he should be required to submit a copy of this Report and Recommendation (together with Your Honor's decision) to every court before which he has an active case.

## IV. CONCLUSION

For the foregoing reasons, I recommend, respectfully, that insofar as the Amended Petition seeks (i) immediate release or (ii) an order requiring the BOP to provide credit against petitioner's sentence for evidence-based recidivism reduction programming or productive activities that he completed while in pretrial detention, or for completing a residential drug abuse program, it be DENIED. Insofar as the Amended Petition challenges petitioner's conditions of confinement at FCI Otisville, I recommend that it be DISMISSED as moot. Insofar as the Amended Petition seeks compassionate release or a reduction or correction of petitioner's sentence, I recommend that it be DISMISSED for lack of jurisdiction, without prejudice to refiling in the Western District of Washington. Finally, I recommend that petitioner be directed to submit a copy of this Report and Recommendation (together with Your Honor's decision) to every court before which he has an active case.

Dated: New York, New York
June 24, 2025

**BARBARA MOSES**
**United States Magistrate Judge**

**NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties have 14 days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), unless they receive this Report and Recommendation solely by mail, in which case they have 17 days from the date on which it was mailed. *See* Fed. R. Civ. P. 6(a), 6(d). Any objections must be filed with the Clerk of the Court, addressed to the Hon. Vernon S. Broderick, and delivered to Judge Broderick in accordance with his individual practices. Any request for an extension of the deadline to file objections must also be directed to Judge Broderick. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).