UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                      :

DONTE MCCLELLON,                   :

                                     :

                     Petitioner,    :

                                     :         24-CV-10053 (VSB) (BCM)

         - against -         :

                                     :        **OPINION & ORDER**

                                     :

E. RICKARD, Warden of FCI Otisville; and  :
WILLIAM K. MARSHALL III, Director of  :
Federal Bureau of Prisons,          :

                                     :

                   Respondents. :

                                     :
-----------------------------------------------------------X

Appearances:

Donte McCellon
Seattle, WA
*Pro se Petitioner*

Leslie A. Ramirez-Fisher
United States Attorney's Office, SDNY
New York, NY
*Counsel for Respondents*

VERNON S. BRODERICK, United States District Judge:

      Petitioner Donte McClellon ("McClellon" or "Petitioner") filed a motion for a writ of

habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition") seeking to apply his earned time credits

to recalculate his sentence of incarceration.  (Docs. 1 ("Pet."), 17 ("Am. Pet.").)  Before me is the

Report and Recommendation of United States Magistrate Judge Barbara C. Moses (the "Report"

or "R&R") recommending that I deny the Petition, (Doc. 30 ("Report")), Petitioner's Motion for

a Preliminary Injunction and Temporary Restraining Order, (Doc. 31), and Petitioner's Motion

for Reconsideration of Denial of Appointment of Counsel, (Doc. 49).  Petitioner's objections (the

"Objections") to the Report are also before me.  (Doc. 47 ("Obj.").)[1]  Because Petitioner fails to raise any proper objections to the Report and raises arguments that are not grounded in the record or the law, I ADOPT the Report in almost its entirety and DENY the Petition.  Moreover, I also DENY Petitioner's Motion for a Preliminary Injunction and Temporary Restraining Order, (Doc. 31), and his Motion for Reconsideration of Denial of Appointment of Counsel, (Doc. 49), as moot.

## I.    **Background**[2]

On December 21, 2018, Congress enacted the First Step Act ("FSA"), which permits federal inmates to participate in recidivism reduction programs to earn time credits qualifying them for early release from custody.  *See* 18 U.S.C. §§ 3632(d)(4), 3624(g)(1).  Under this system, an incarcerated person who successfully completes evidence-based recidivism reduction ("EBBR") programming or "productive activities" ("PAs"), *id.* § 3632(d)(4), earns "credits [that] may be applied either toward earlier placement in pre-release custody or toward a term of supervised release."  *Rodriguez-Morales v. Jamison*, No. 23-CV-7956, 2024 WL 4479911, at *1 (S.D.N.Y. Sept. 24, 2024).

---

[1] Petitioner claims in his objections that he was never served with a copy of the Report and proceeds based "on the docket summary available for free via PacerMonitor.com and using citations derived from the Respondents' opposition to Petitioner's Request for Preliminary Injunction and Temporary Restraining Order."  (Obj. 2.)  I am aware that because Petitioner's location changed multiple times during the pendency of this litigation, Petitioner has had issues with the service of some pleadings in this case.  (*See* Doc. 41.)  However, on November 24, 2025, Magistrate Judge Moses again extended Petitioner's deadline to file his objections until December 15, 2025 after acknowledging these service issues and noted that "[n]o further extensions of this deadline will be granted absent compelling circumstances."  (Doc. 44.)  Additionally, *pro se* Petitioner consented to receiving electronic service on November 30, 2025.  (Doc. 48.)  Despite the fact that Magistrate Judge Moses *sua sponte* extended Petitioner's deadline for his objections, Petitioner filed his objections on November 24, 2025 without seeking additional extensions.  (*See generally* Obj.)  On December 10, 2025, Petitioner also filed another motion after he consented to receiving electronic service.  (Doc. 49.)  Since Petitioner has not amended his objections or filed any supplemental objections after he consented to electronic service, I construe this as his final set of objections to Magistrate Judge Moses' Report and Recommendation.

[2] For purposes of this Opinion & Order, I assume familiarity with the underlying facts and analysis as set forth in Magistrate Judge Moses' Report and Recommendation.  (*See generally* Report.)  However, I provide a short summary of the factual and procedural history of this case in the Background section of this Opinion & Order.

Petitioner was sentenced on May 29, 2024 in the Western District of Washington to 42 months of incarceration, followed by 36 months of supervised release—two years after he was indicted for multiple counts of wire fraud and bank fraud.  (Report 1–2.)  On December 20, 2024, Petitioner filed a writ of habeas corpus under 28 U.S.C. § 2241 challenging his incarceration, (Doc. 1), which he supplemented on March 18, 2025, (Doc. 17).  McClellon makes four categories of arguments.  First, Petitioner argues that, under the First Step Act ("FSA"), 8 U.S.C. § 3632(d)(4)(A), his sentence was incorrectly calculated because he is entitled to time credits earned during the approximately 18 months that he spent in pre-trial detention before he pled guilty and was sentenced to his term of incarceration.  (Report 1).  This includes his participation in EBBR programming and PAs while detained at the Federal Detention Center in SeaTac, Washington ("SeaTac"), which entitles to him at least six months of earned time credit.  (Report 6.)  Second, Petitioner, in his reply, alleges that he is entitled to a 12-month sentence reduction because he completed a residential drug abuse program ("RDAP").  (Doc. 25 ("Reply") at 2–4, 8, 14–18, 19–21.)  Third, Petitioner proffers conditions of confinement claims that hinge on the poor working conditions and inadequate medical care at the Federal Correctional Institution in Otisville, New York ("FCI Otisville'), where he was confined at the time the Petition was filed.  (Report 6, 21).  Finally, Petitioner also requests compassionate release or a reduction of his sentence.  (Am. Pet. 4.)

On June 24, 2025, Magistrate Judge Moses issued her Report recommending that: (1) insofar as the Petition and Amended Petition "seeks (i) immediate release or (ii) an order requiring the [Federal Bureau of Prisons ("BOP")] to provide credit against petitioner's sentence for [EBBR] programming or [PAs] that he completed in pretrial detention, or for completing a residential drug abuse program, it be denied"; (2) insofar as the Petition and Amended Petition

3

"challenges petitioner's conditions of confinement at FCI Otisville," it should be dismissed as moot; (3) Petitioner's compassionate release or a reduction or correction of sentence claims should be dismissed for lack of jurisdiction, without prejudice to refiling in the Western District of Washington; and (4) Petitioner should be directed to submit a copy of the Report and the future Opinion & Order to every court before which he has an active case. (Report 24.) The Report notified the parties that they had "14 days from this date to file written objections to this Report and Recommendation." (*Id.* at 25.)

On July 10, 2025, Petitioner filed a motion for a preliminary injunction ("PI") and temporary restraining order ("TRO") in both this case and *McClellon v. USA*, No. 25-CV-2988, a related matter in front of me against the United States asserting claims under the Federal Tort Claims Act and pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In the motion, Petitioner requests "immediate release from BOP custody and relocation to the Southern District of New York from the Western District of Washington for [the] Supervised Release portion of [his] sentence." (Doc. 31 ("PI Mot.") at 1.) Similar to his habeas petition, Petitioner's request for a PI and TRO hinges on his argument that he had performed "productive activities" for which he should have received earned time credits under the FSA. (PI Mot. 2.) McClellon alleges that he is entitled to "30 months of creditable time (365 days of FSA earned time credits; 365 days of RDAP sentence reduction credit; and 189 days of Good Conduct time credit)." (*Id.*) Petitioner also maintains that BOP regulations at 28 C.F.R. § 523.42, providing that a prisoner may not earn time credits under the FSA until his arrival at his designated facility, are inconsistent with the statute, 18 U.S.C. § 3585(a).[3] On July

---

[3] Petitioner also alleges claims regarding his incarceration that are more closely related to the relief he is seeking in his related matter, *McClellon v. USA*, No. 25-CV-2988, which is also in front of me. (PI Mot. 4–5.) Thus, I will address other portions of the PI and TRO in the related matter, as appropriate.

25, 2025, Respondents filed their opposition brief to the preliminary injunction motion.  (Doc. 35.)

On October 1, 2025, Petitioner was released from BOP Custody and began his sentence of supervised release.  (Obj. 2.)  On November 24, 2025, Petitioner filed his reply in support of his PI and TRO motion, modifying his request to an "an order immediately releasing Petitioner from further supervision" based on the same arguments regarding his earned time credits.  (Doc. 45 at 2.)  That same day, November 24, 2025, Petitioner also filed his objections to Magistrate Judge Moses' Report, after several extensions due to service issues, arguing that his earned time credit should apply to reduce his supervised release term.  (*See generally* Obj.)  Respondents did not file any objections to the report, nor did they seek additional time to do so.  Respondents also did not file a response to Petitioner's objections.  Moreover, after Magistrate Judge Moses denied Petitioner's request for the appointment of pro bono counsel on November 24, 2025, (Doc. 44), on December 10, 2025, Petitioner filed a motion for reconsideration of the denial of appointment of counsel, (Doc. 49).

## II.    **Legal Standards**

### A.    *Review of a Magistrate Judge's Report*

In reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  "If a party timely objects to any portion of a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'"  *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015) (quoting 28 U.S.C. § 636(b)(1)(C)).

Pursuant to the standard often articulated by the district courts of this Circuit, "[i]f a party . . . 'simply relitigates his original arguments, the Court reviews the Report and Recommendation only for clear error.'" *Antrobus v. N.Y. City Dep't of Sanitation*, 2016 WL 5390120, at *1 (E.D.N.Y. Sept. 26, 2016) (quoting *Barrat v. Joie*, No. 96-CV-324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)); *see also Pena v. Rivera*, No. 05-CV-3109, 2006 WL 2529771, at *1 (S.D.N.Y. Aug. 31, 2006). General and conclusory objections are also only reviewed for clear error. *See* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations.*")*; *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (summary order) ("[G]eneral objection[s] [are] insufficient to obtain de novo review by [a] district court."). Under a clear error standard of review, "[s]o long as there is a basis in the evidence for a challenged inference, [the court] do[es] not question whether a different inference was available or more likely." *Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007). Notably, a reviewing court need "respond only to 'those portions of the recommendations to which objection is made.'" *Shukla v. Deloitte Consulting LLP*, No. 19-CV-10578, 2021 WL 3721349, at *3 (S.D.N.Y. Aug. 20, 2021) (quoting *United States v. Male Juvenile* (95-CR-1074), 121 F.3d 34, 38 (2d Cir. 1997)).

### B. *Habeas Relief*

Habeas corpus relief under 28 U.S.C. § 2241 is available to individuals "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Courts have the authority to review a petition for a writ of habeas corpus and "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled [to such relief]." 28 U.S.C. § 2243. The Second Circuit has noted that a "challenge to the execution of a

6

sentence—in contrast to the imposition of a sentence—is properly filed pursuant to § 2241." *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) (cleaned up). Execution of a sentence may include "such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Jiminian v. Nash,* 245 F.3d 144, 146 (2d Cir. 2001); *see also Chi v. Fernandez*, No. 18-CV-1212, 2019 WL 6894837, at *4 (N.D.N.Y. Dec. 18, 2019) ("Execution of a sentence includes, among other things, prison disciplinary actions, loss of [good time credit], and the computation of the sentence. . . ."). Therefore, "[t]he proper vehicle for a challenge to the BOP's calculation of earned time credit is a petition for a writ of habeas corpus under 28 U.S.C. § 2241." *Sanchez v. Warden at F.C.I. Hazelton*, No. 24-CV-1251, 2024 WL 1969792, at *2 (S.D.N.Y. May 1, 2024). "When a petitioner brings a habeas petition pursuant to § 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)).

### C. *Mootness*

"In order to satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006) (internal quotation marks omitted). Because federal courts are without power to consider a case unless it presents a "live controversy," judges have a duty to consider mootness *sua sponte*. *In re Bed Bath & Beyond Inc. Section 16(B) Litig.*, No. 22-CV-9327, 2024 WL 2958743, at *4 (S.D.N.Y. June 11, 2024) (internal quotation marks omitted).

7

"'[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (cleaned up)). Once a case becomes moot, a federal court no longer has subject-matter jurisdiction over the action, *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140–41 (2d Cir. 1994), and the court "must dismiss the case," *Blackburn*, 461 F.3d at 261 (internal quotation marks omitted). While a habeas petition is not automatically terminated upon the release of the petitioner from custody, *see Carafas v. LaVallee*, 391 U.S. 234, 237–40 (1968), the petition will be moot if the petitioner does not stand to suffer from "collateral consequences adequate to meet Article III's injury-in-fact requirement," *Spencer v. Kemna*, 523 U.S. 1, 13–14 (1998).

### D. *Preliminary Injunction*

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "Any party seeking a preliminary injunction 'must demonstrate that it will suffer irreparable harm in the absence of the requested relief.'" *Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007) (quoting *Latino Officers Ass'n v. Safir*, 170 F.3d 167, 171 (2d Cir. 1999)). To succeed on an application for a preliminary injunction, a movant must demonstrate: "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). "The purpose of a preliminary injunction is not to award the movant the ultimate relief sought in the suit but is only to preserve the status quo by preventing during the pendency of the suit the occurrence of that irreparable sort of harm

8

which the movant fears will occur." *Kane v. De Blasio*, 19 F.4th 152, 163 (2d Cir. 2021) (per

curiam) (internal quotation marks omitted).

A movant seeking injunctive relief has a "heavier burden" than a plaintiff who must plead

a "plausible claim necessary to avoid dismissal." *New Hope Fam. Servs., v. Poole*, 966 F.3d

145, 165 (2d Cir. 2020) (citation omitted). Indeed, in considering the motion for a preliminary

injunction, a court "need not accept as true the well-pleaded allegations in [p]laintiff's

complaint." *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 469

(S.D.N.Y. 2020) (internal quotation marks omitted).

## III.   Discussion

### A. *Mootness*

As an initial matter, before I evaluate the habeas petition, Judge Moses' Report, or

Petitioner's objections, I must consider the changed circumstances in the case since the Report

was issued—namely, Petitioner's release from BOP custody. (Obj 2.) "[M]ootness is not fixed

at the time of filing but must be considered at every stage of the habeas proceeding."

*Nowakowski v. New York*, 835 F.3d 210, 217 (2d Cir. 2016). "If, as a result of changed

circumstances, a case that presented an actual redressable injury at the time it was filed ceases to

involve such an injury, it ceases to fall within a federal court's Article III subject matter

jurisdiction and must be dismissed for mootness." *Janakievski v. Exec. Dir., Rochester

Psychiatric Ctr.*, 955 F.3d 314, 319 (2d Cir. 2020).

However, "a habeas petition does not necessarily become moot when the order it

challenges is no longer in effect, so long as the petitioner suffers some concrete and continuing

injury or collateral consequence resulting from the challenged order." *Id.* (internal quotation

marks omitted). The Second Circuit has made clear that the release of a prisoner who has filed a

habeas petition challenging the execution of his sentence "does not automatically render the petition moot because the court could fashion a post-release remedy such as a reduction in the petitioner's term of supervised release." *Walker v. Killian*, No. 07-CV-8837, 2010 WL 8266201, at \*1 (S.D.N.Y. Jan. 26, 2010), *report and recommendation adopted*, 2012 WL 34097 (S.D.N.Y. Jan. 6, 2012) (citing *Levine*, 455 F.3d at 76–77).  In other words, evaluating and potentially modifying the length of a petitioner's supervised relief term would qualify as "effectual relief" sufficient to articulate a live "case or controversy." *Apker*, 455 F.3d at 77.

While some courts, including at least one in this district, have determined that "FSA Credits cannot be applied to reduce a term of supervised release under the statute," which means that release would moot petitioner's earned time claims, *see Goggans v. Jamison*, No. 23-CV-03645, 2023 WL 7389136, at \*1 (S.D.N.Y. Oct. 13, 2023), the Ninth Circuit has recently clarified that "Congress intended for the FSA's earned time credits to reduce a prisoner's supervised release term." *Gonzalez v. Herrera*, 151 F.4th 1076, 1081 (9th Cir. 2025).[4]  I find the Ninth Circuit's holding persuasive enough to proceed to address the merits of Petitioner's claims.

Therefore, McClellon's Petition seeking relief based on his earned time credits is not moot simply because of his release from BOP custody in October 2025, since his claims could still apply to modify his current term of supervised release.

### B.  *Objections*

I now turn to the merits of Petitioner's habeas petition—namely, his objections to Magistrate Judge Moses' Report.  Petitioner asserts twelve objections to the Report.  Those objections are summarized by the following headers contained in his objections:

---

[4] The Second Circuit has not issued a ruling on whether FSA credits can be applied to reduce an individual's supervised release term.

1. "THE R&R MISAPPLIES THE FIRST STEP ACT AND MISCHARACTERIZES PETITIONER'S FSA CLAIMS."  (Obj. 2.)

2. "PETITIONER IS NOT MERELY SEEKING 'CONDITIONS OF CONFINEMENT' RELIEF."  (*Id.* at 8.)

3. "COMPASSIONATE-RELEASE / SENTENCE MODIFICATION ISSUES SHOULD NOT FORECLOSE FSA RELIEF."  (*Id.* at 9.)

4. "THE DIRECTIVE TO FILE THE R&R IN 'EVERY COURT' IS UNDULY PREJUDICIAL AND BEYOND THE PROPER SCOPE OF RELIEF."  (*Id.* at 10.)

5. "RECENT CASE LAW (HEATH, MOHAMMED, LOPER BRIGHT) CONFIRMS THAT THE R&R APPLIED THE WRONG LEGAL STANDARD AND FAILED TO CONDUCT INDEPENDENT STATUTORY ANALYSIS."  (*Id.* at 11.)

6. "STATUTORY CONSTRUCTION REQUIRES RECOGNITION OF PETITIONER'S FSA CREDITS—INCLUDING FOR PRODUCTIVE ACTIVITIES— AND PROHIBITS UNEXPLAINED REVOCATION OF PREVIOUSLY AWARDED CREDITS."  (*Id.* at 14.)

7. "PETITIONER IS ENTITLED TO COURT-APPOINTED COUNSEL."  (*Id.* at 15.)

8. "ADDITIONAL PERSUASIVE AUTHORITY (PATEL v. BARRON AND SHARMA v. PETERS, JACKSON V. DOERER) CONFIRMS THAT THE BOP'S FSA TIMING POLICIES ARE CONTRARY TO STATUTE AND CANNOT BE ADOPTED WITHOUT INDEPENDENT ANALYSIS."  (*Id.* at 16.)

9. "PRODUCTIVE ACTIVITIES PROVIDE A STATUTORY PATHWAY FOR PRESENTENCING / PRETRIAL FSA CREDITS—A SEPARATE CREDIT-EARNING MECHANISM THAT THE R&R FAILED TO ANALYZE."  (*Id.* at 19.)

11

10. "THERE IS *NO* 'SPLIT AUTHORITY' ON § 523.42(a)—THE OVERWHELMING WEIGHT OF AUTHORITY HOLDS THAT THE BOP'S REGULATION IS CONTRARY TO THE FSA, AND THE R&R MISCHARACTERIZES THE LAW." (*Id.* at 22 (emphasis in original).)

11. "BECAUSE PETITIONER HAS NOW COMPLETED HIS TERM OF IMPRISONMENT AND IS ON SUPERVISED RELEASE, ALL FSA, PA, RDAP, AND GCT CREDITS MUST BE APPLIED TO REDUCE THE SUPERVISED RELEASE TERM UNDER Gonzalez v. Herrera AS STORED VALUE." (*Id.* at 27.)

12. "THE BOP'S SENTRY-BASED CREDIT-TRACKING SYSTEM IS DEFECTIVE AND UNRELIABLE — OFFICIAL GOVERNMENT REPORTS CONFIRM THAT IT CANNOT BE RELIED ON AS A BASIS FOR DEFERENCE." (*Id.* at 33.)

Each of Petitioner's objections falls under one of the following categories of arguments: (1) his earned-time credits should reduce his sentence of incarceration or supervised release term; (2) BOP policy and regulations conflict with the FSA and are not entitled deference; (3) the directive to file the R&R and this Opinion & Order in every court as a sanction, because Petitioner cited case law that does not exist, is unduly prejudicial; and (4) petitioner is entitled to court appointed counsel. I address each objection in turn.

### 1. Earned-Time Credit Claims

Petitioner's first, second, third, sixth, ninth, and eleventh objections are essentially claims that his earned-time credits should reduce his sentence. Three of Petitioner's objections—his first, sixth, and ninth—hinge on his argument that the Report "misapplies the First Step Act," (Obj. 2 (First Objection)) and that "Productive Activities" are an equal, but distinct pathway, from EBRR credits to warrant a sentence reduction, (*see* Obj. 7 (First Objection), 14 (Sixth

12

Objection), 19 (Ninth Objection)), even if Petitioner earned those credits before sentencing, (*see* Obj. 7, 21).

As Magistrate Judge Moses correctly notes, however, the FSA "does not allow credits to be awarded for a prisoner's pre-sentencing rehabilitation programming." *Smith v. Stover*, No. 23-CV-01645, 2024 WL 3279014, at *1 (D. Conn. June 20, 2024). The statute clearly notes that a person cannot earn time credits "during official detention prior to the date that the prisoner's sentence commences under section 3585(a)." 18 U.S.C. § 3632(d)(4)(B)(ii). "[U]nder 18 U.S.C. § 3585(a), a federal sentence cannot commence prior to the date on which it is imposed." *Lopez v. Terrell*, 654 F.3d 176, 185 (2d Cir. 2011) (paraphrasing *United States v. Labeille-Soto*, 163 F.3d 93, 98 (2d Cir. 1998)). Thus, the FSA does not allow Petitioner "to receive credit for any rehabilitation programming [he] completed before [he] was sentenced" on May 29, 2024. *Smith*, 2024 WL 3279014, at *2.

This analysis is not changed by arguments attempting to clarify and distinguish Productive Activities. As other courts in this circuit have made clear, "no [earned time credits] may be earned for any EBRRs or PAs completed before the inmate's sentence commences." *Perevoznikov v. Stover*, 747 F. Supp. 3d 329, 332 (D. Conn. 2024); *see also Brodie v. Pliler*, No. 22-CV-3821, 2022 WL 16751908, at *1 (S.D.N.Y. Nov. 7, 2022) ("The FSA provides that no such [time credits] can be earned . . . during a period of detention prior to the incarcerated person's sentence commencing.").[5] Contrary to Petitioner's argument, the Report did not fail to consider Productive Activities as a separate and equal way to earned time credits to reduce sentencing. Magistrate Judge Moses considered both Petitioner's EBRR and PA time, including when he worked as a "unit orderly," and explicitly rejected this argument. (Report 6, 16–17.)

---

[5] There does not appear to be any directly on point guidance from the Second Circuit on this specific issue.

Here, McClellon tries to relitigate the same arguments and claims he raised in his Petition using different language, and I do not find clear error. *See Antrobus*, 2016 WL 5390120, at *1 (explaining that when a party is simply relitigating the original arguments, a district court judge reviewed the report and recommendation only for clear error). Indeed, even under a *de novo* review, Petitioner is not entitled to time credits for rehabilitation programming before sentencing.

Next, Petitioner's second and third objections address points that were never made in Magistrate Judge Moses' Report. In his second objection, Petitioner argues that to the extent "the R&R characterizes Petitioner's FSA time-credit and RDAP-related claims as 'conditions of confinement' rather than challenges to the execution of his sentence, that is error." (Obj. 9) Moreover, he requests that the court "sever any pure conditions claims" and "adjudicate his time-credit/sentence-execution claims on the merits." (*Id.*) In his third objection, Petitioner similarly argues that his compassionate release claims should not foreclose FSA relief and that these claims should be considered separately. (*Id.* at 9–10.) Magistrate Judge Moses did not do what Petitioner claims in his second and third objections. Instead, Magistrate Judge Moses evaluated Petitioner's FSA and RDAP claims separately on their merits before deciding that Petitioner is not entitled to these earned time credits. (Report 21–22.) She also: (1) dismissed Petitioner's conditions-of-confinement claim for lack of subject-matter jurisdiction, since these claims are moot since he is no longer confined at FCI Otisville; and (2) dismissed his compassionate release claim—or his request for a reduction of his sentence—for lack of jurisdiction, without prejudice to refiling in the Western District of Washington. (*Id.* at 21–22, 24.) In short, Petitioner's second and third objections do not actually address Magistrate Judge Moses' findings in the Report, and to the extent he makes any arguments regarding his additional claims, they merely repeat arguments already rejected by Magistrate Judge Moses. Since Petitioner is "simply

14

relitigat[ing] his original arguments, [I] review[] the Report and Recommendation only for clear error." *Antrobus*, 2016 WL 5390120, at *1 (internal quotation marks omitted).  I find no such clear error in Magistrate Judge Moses' Report with regard to Petitioner's compassionate release or conditions of confinement claims.

Petitioner's eleventh objection argues that because he is now on supervised release, his "status change is legally critical because it triggers the mandatory application of *all* earned FSA credits toward the reduction of Petitioner's supervised release."  (Obj. 27 (emphasis in original).)  Although these "earned time credits [can] be applied to reduce the length of a supervised release term," *Gonzalez*, 151 F.4th at 1083, Magistrate Judge Moses already correctly found that Petitioner's credits cannot be applied at all.  Here, it does not matter whether Petitioner is in custody or on supervised release.  The Report made clear that McClellon's earned time claims fail regardless.  Again, Petitioner simply tries to relitigate the same argument under the guise of the case's changed posture, but this fails too.

Moreover, in his eleventh objection, Petitioner also tries to bring up new points regarding his earned time credit.  For example, he explains that the BOP "also revoked 54 days of Good Conduct Time without providing constitutionally required due process."  (Obj. 29).  Petitioner did not make this due process argument in his original Petition or Amended Petition, nor does he clarify any details about when or how he earned these time credits.  "[P]arties may not raise new arguments for the first time in objections to a report and recommendation."  *Erickson v. Jernigan Cap., Inc.*, 692 F. Supp. 3d 114, 120 (S.D.N.Y. 2023).  Thus, I do not evaluate Petitioner's new argument.

## 2.  BOP Deference Claims

Petitioner's fifth, eighth, tenth, and twelfth objections are essentially claims arguing that BOP policy and regulations conflict with the FSA and are not entitled to deference.  Here, again, Petitioner primarily repeats the same claims he made to Magistrate Judge Moses that she addressed and rejected.  His fifth objection claims that recent case law "rebut[s] the R&R's assumption that BOP interpretations are controlling or that FSA-credit claims may be denied without detailed analysis." (Obj. 11.)  Similarly, Petitioner's eighth objection argues that the "statute, not BOP regulation or policy, controls FSA eligibility." (*Id.* at 16.)  In his tenth objection, McCellon argues that "Congress—not BOP policy—controls" and that the "overwhelming weight of authority" holds that the BOP regulation governing the FSA, 28 C.F.R. § 523.42, is contrary to the FSA. (*Id.* at 22–23.)  Petitioner's twelfth objection argues that the BOP case management system insufficiently tracks earned-time credits and is not a "reliable basis for deference." (*Id.* at 35.)  However, Petitioner has already argued that "[c]ourts owe no deference to the BOP's internal rules or informal interpretations that conflict with clear statutory mandates" in his original habeas briefing, an argument that was already considered by Magistrate Judge Moses. (Reply 2–3; *see also* Am. Pet. 5.)  Because Petitioner "simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018).

I find no such clear error.  As Magistrate Judge Moses carefully notes, I "need not pick sides" on whether BOP policies and regulations are warranted any deference in this case or conflict with the FSA, because these questions are not outcome determinative in this case. (Report 19.)  It is irrelevant whether Petitioner was eligible to earn FSA time credits "from the moment he was sentenced, on May 29, 2024, or not until he arrived at FCI Otisville on July 3, 2024," because he "did not actually participate in any EBRR activity or PAs after sentencing but

16

before his arrival at FCI Otisville." (*Id.* (internal quotation marks omitted).)  Contrary to Petitioner's objections, the Report did not actually defer to the BOP or follow its policies and regulations in recommending the denial of the habeas petition.  Magistrate Judge Moses made clear "the prohibition on persons in prejudgment custody receiving FSA credits does not derive from BOP policy, but from the FSA itself." (Report 19–20 (citing *Schaefer v. Eischen*, 2025 WL 1118627, at *2 (D. Minn. Mar. 12, 2025)).  In other words, Magistrate Judge Moses' decision was based on the FSA, not BOP policy or regulations.  Since Magistrate Judge Moses was correct on both the law and its application here, I find no clear error.

Even if I were to evaluate Petitioner's objections regarding BOP deference *de novo*, as discussed *supra*, it is the FSA, not BOP policy, that makes clear that Petitioner cannot earn time credit while in pre-trial detention prior to sentencing.  "[T]he FSA prohibits prisoners from earning time credits during the period when he or she is in 'official detention' but has not yet reached the date his or her 'sentence commences under [18 U.S.C. §] 3585(a).'" *Yufenyuy v. Warden, FCI Berlin*, 659 F. Supp. 3d 213, 216 (D.N.H. 2023) (quoting 18 U.S.C. § 3632(d)(4)(B)(ii)).  In other words, "the FSA does not allow credits to be awarded for a prisoner's pre-sentencing rehabilitation programming." *Smith*, 2024 WL 3279014, at *1. Therefore, Petitioner's arguments regarding BOP deference here are irrelevant and carry no weight, since it is the FSA itself that bars the accrual of earned-time credits before his sentence commenced.  I also agree with Magistrate Judge Moses' conclusion that this case does not implicate the question of whether I need to defer to BOP's regulations in construing if FSA time credits can be earned when the sentence is first issued or only when the individual "arrives" at the BOP facility where the sentence will be served.  (Report 18.)  There is no evidence that Petitioner completed any FSA programming between the date he was sentenced and his arrival at

17

FCI Otisville.  Despite Petitioner's claims that the BOP credit-tracking system, SENTRY, is

inaccurate and that he "participated in a range of FSA qualifying activities from . . . January 31,

2023, to June 26, 2024," which includes time after his May 29, 2024 sentencing, (Obj 32–33), he

provides no evidence to support this claim.  *See Hattrick v. FMC-Devens Staff*, No. CV 06-

40238, 2009 WL 10873024, at *3 (D. Mass. Mar. 30, 2009) ("Although plaintiff suggests that

SENTRY's listing of claims is inaccurate this contention is belied by the record.")  Moreover,

Respondents provide records showing otherwise—that Petitioner did not "complete any

education programming or participate in any productive activities" between his May 29, 2024

sentencing and his arrival at FCI Otisville on July 3, 2024.[6]  (Doc. 20 at 2.)  Therefore,

Petitioner's fifth, eighth, tenth, and twelfth objections also fail.

### 3.    Remaining Objections

I now turn to the only remaining objections—that the directive to file the Report and this

Opinion & Order in every court is "unduly prejudicial," (Obj. 10), and Petitioner is entitled to

court-appointed counsel, (*id.* at 15).

First, Magistrate Judge Moses correctly identifies at least three cases cited in Petitioner's

reply memorandum in support of his Petition that do not exist.  (Report 23.)  Based on these

erroneous citations, I surmise that these citation problems are due to Petitioner's use of

generative artificial intelligence tools ("AI").  *See, e.g.*, *Advani v. App. Term, 2nd Jud. Dep't*,

No. 25-CV-1627, 2025 WL 2201065, at *3 (S.D.N.Y. Aug. 1, 2025).  These citations are likely

"hallucinated," a term used for citations produced by AI "that conform to the Bluebook, but

---

[6] Petitioner provides inconsistent statements across multiple briefs regarding his FSA program participation.  In his Motion for a Preliminary Injunction, Petitioner claims to have worked as an orderly from "01/31/2023 to 06/26/24" and participated in various FSA programming recommended by his unit team "during [the] period of 06/26/2024 to 07/03/2024."  (PI Mot. 2.)  However, in his reply in support of his motion for a preliminary injunction, McClellon alleges that he "continuously participated in EBRR and PA activities" from January 2023 to October 2025.  (Doc. 45 at 29.)  Petitioner does not provide any documentary evidence to support these claims.

ultimately are not real." *Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 342

(E.D.N.Y. 2025). Courts in this circuit have repeatedly found that presenting AI-generated

hallucinations as valid caselaw constitutes subjective bad faith. *See Mata v. Avianca, Inc.*, 678

F. Supp. 3d 443, 448–49 (S.D.N.Y. 2023); *Benjamin*, 779 F. Supp. 3d at 349–50; *Ramirez v.

Humala*, No. 24-CV-242, 2025 WL 1384161, at *2 (E.D.N.Y. May 13, 2025); *Kaur v. Desso*,

No. 25-CV-726, 2025 WL 1895859, at *3 (N.D.N.Y. July 9, 2025). "This conduct undermines

the integrity of the judicial process and disrespects and wastes the Court's and parties' time and

resources." *Andre v. Warden, FCI Danbury*, No. 24-CV-01295, 2025 WL 3281732, at *10 (D.

Conn. Nov. 25, 2025). "Without question, it is improper and unacceptable for litigants—

including *pro se* litigants—to submit non-existent judicial opinions with fake quotes and

citations." *Anonymous v. New York City Dep't of Educ.*, No. 24-CV-04232, 2024 WL 3460049,

at *7 (S.D.N.Y. July 18, 2024) (internal quotation marks omitted).

In order to address the increase in generative AI use and hallucinations, many of my

colleagues and I have adopted individual rules requiring all litigants, whether *pro se* or

represented by counsel, to "disclose that AI has been used." *See, e.g.*, Individual R. & Prac. in

Civ. Cases 4(J). In my rules, I also require the party to "further certify in the document that it

has independently reviewed and verified the accuracy of any portion of the document drafted by

generative AI" and "[f]ailure to comply with this rule may result in sanctions, the document

being stricken, or other remedies that the Court deems appropriate." *Id.* This obligation requires

litigants to carefully review every statement and citation drafted by AI to ensure that it is legally

and factually correct, particularly given that AI tools make it much easier for pro se litigants to

submit "voluminous" briefing. *See Thornock v. Corp. of the Presiding Bishop of the Church of

Jesus Christ of Latter-Day Saints*, No. 25-CV-56, 2025 WL 1900314, at *4 n.5 (E.D. Va. July 9,

2025).  "Even as a pro se plaintiff, Plaintiff is required to comply with the Local Rules and Federal Rules of Civil Procedure."  *Zheng v. Internet Corp. for Assigned Names & Numbers*, No. 25-CV-04808, 2025 WL 4055401, at *4 (C.D. Cal. Dec. 23, 2025).

Although I do not agree with Petitioner's contention that the requirement to file the Report and this Opinion & Order in "every court before which he has an active case" is unduly prejudicial, I note that other courts in this District and throughout the Circuit have simply cautioned *pro se* parties after their first violation of this issue.  *See, e.g.*, *Romero v. Goldman Sachs Bank USA*, No. 25-CV-2857, 2025 WL 1916119, at *1–2 (S.D.N.Y. June 25, 2025) (placing the parties on notice that "citations, quotations, and holdings that have been generated by generative artificial intelligence may be hallucinations"); *Reilly v. Conn. Interlocal Risk Mgmt. Agency*, No. 25-CV-640, 2025 WL 1726366, at *2–3 (D. Conn. June 20, 2025) ("Whether the issues with [the *pro se* litigant's] filings are the result of artificial intelligence or some other mistake, the Court cautions [the litigant] to ensure that future submissions to any court contain only accurate representations."); *Advani*, 2025 WL 2201065, at *3 (finding that because of plaintiff's *pro se* status, the court declines to pursue the matter of AI hallucinations).  Thus, although I adopt Magistrate Judge Moses' reasoning regarding the harms of AI hallucinations in legal briefs, I decline to adopt her recommendation that Petitioner must submit a copy of the Report and this Opinion & Order to every court before which he has an active case.  However, Petitioner is warned that he should disclose his use of AI in the future, and that the use of AI resulting in hallucinated cases can result in sanctions.

Second, because I adopt Magistrate Judge Moses' Report dismissing the Petition, as discussed *supra*, "petitioner's request for the appointment of counsel is . . . moot."  *Bacchus v. New York*, No. CV-93-1247, 1995 WL 62599, at *8 (E.D.N.Y. Feb. 8, 1995).  Even if I were to

20

consider this argument, "parties may not raise new arguments for the first time in objections to a report and recommendation." *Erickson*, 692 F. Supp. 3d at 120.  Therefore, Petitioner's appointment of counsel objection fails.

Almost all of Petitioner's objections are attempts to relitigate issues that Magistrate Judge Moses already considered and rejected or attempts to raise completely new arguments.  Because I find that the Report did not commit any clear error for all other arguments, I hereby ADOPT the Report in its entirety, except for the requirement Petitioner file the Report and this Opinion & Order in other cases as a sanction, and DENY the Petition.

### C. Preliminary Injunction

Petitioner's preliminary injunction and temporary restraining order motion requests "immediate release from BOP custody and relocation to the Southern District of New York from the Western District of Washington for [the] supervised release portion of [his] sentence." (PI Mot. 1.)  Similar to his habeas petition, Petitioner's request for a PI and TRO hinges on his argument that he had performed "productive activities" while in pre-trial custody for which he should have received earned time credits under the FSA.  (*Id.* at 2.)  Petitioner's PI and TRO motion fails for multiple reasons.  First, the denial of his Petition moots his request for a preliminary injunction on the same grounds.  *See Jackson v. Capra*, No. 14-CV-202, 2015 WL 1064900, at *1 (S.D.N.Y. Mar. 2, 2015).  Second, even if I were to evaluate Petitioner's PI and TRO on its merits, McClellon has failed to show a likelihood of success, a key tenant to this relief.  His request for immediate release, even if interpreted as a reduction to his supervised release sentence now that he is out of custody, clearly fails.  As Magistrate Judge Moses and this Opinion & Order outline, Petitioner's pre-sentencing earned-time credits cannot apply at all. *Smith*, 2024 WL 3279014, at *1.  Moreover, Petitioner's claim for supervised release within the

21

Southern District of New York does not relate to the BOP, as Defendants note, since he is contesting a New York Probation Office decision to deny his proposed pre-release plan. *See Anderson v. FPC Yankton*, No. 23-CV-4136, 2025 WL 416939 at *2 (D.S.D. Feb. 6, 2025) ("'[W]hen a habeas petitioner 'challenges a form of custody other than present physical confinement,' the proper respondent is the 'entity or person who exercises legal control with respect to the challenged 'custody.'" (quoting *Rumsfeld v. Padilla*, 542 U.S. 426 (2004) (cleaned up))). Thus, I also deny Petitioner's PI and TRO motion as moot.

## IV.    **Conclusion**

Based on the articulated reasons, I ADOPT Magistrate Judge Moses' Report in its entirety, except for the requirement that Petitioner file the Report and this Opinion & Order in his other active cases, and DENY the Petition. Moreover, I also DENY Petitioner's Motion for a Preliminary Injunction and Temporary Restraining Order, (Doc. 31), and his Motion for Reconsideration of Denial of Appointment of Counsel, (Doc. 49), as moot. The Clerk of Court is respectfully directed to close the motions at Documents 31 and 49 and terminate the case.

SO ORDERED.

Dated:        March 11, 2026
              New York, New York

_____
Vernon S. Broderick
United States District Judge

22